STATE of Missouri, Respondent,

v.

Billie Gene WOODS, Appellant.

No. 53543.

Supreme Court of Missouri,
Division No. 2.

Dec. 9, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, George Faso, Sp. Asst. Atty. Gen., Kansas City, for respondent.

Robert G. Duncan, Lewis E. Pierce, Pierce, Duncan, Beitling & Shute, Kansas City, for appellant.

MICHAEL F. GODFREY, Special Judge.

The appellant was found guilty by a jury of the offense of knowingly receiving stolen property in violation of § 560.270, RSMo 1959, V.A.M.S., and was sentenced to a term of one year imprisonment in the County Jail. From this judgment he appeals, assigning two grounds relied upon for reversal, the first being that the jury verdict was not supported by substantial or sufficient evidence and the second that his motion to suppress evidence should have been sustained because the evidence used against him on the trial was the product of an illegal search warrant and therefore the result of an unreasonable search and seizure. We shall consider these assignments in the order raised by appellant, the gist of the first being that the State failed to prove the essential element of guilty knowledge on the part of the defendant vitally necessary to sustain this charge.

Section 560.270 provides that every person who shall "buy, or in any way receive, with intent to defraud, any property that shall have been stolen from another, knowing the same to have been stolen, shall upon conviction, be punished in the same manner and to the same extent as for the stealing of the property so bought or received." Since the defendant challenges the sufficiency of the evidence to present a submissible case, it will be necessary to recite in some detail the facts adduced in evidence both on the hearing

on the motion to suppress evidence and on the trial. The verdict being adverse to appellant, we are required, in determining the sufficiency of the evidence to support the jury's verdict, to treat all of the substantial evidence offered by the State as true, together with all reasonable inferences to be drawn therefrom. State v. Gregory, Mo., 406 S.W.2d 662(1, 2). Viewed in this manner the evidence showed that the appellant was charged with the offense of knowingly receiving stolen personal property on or about September 10, 1966, allegedly stolen on or about October 12, 1965, or approximately eleven months before, from Martin Implement and Buick Company of Kahoka, Missouri. As mentioned, before the trial the defendant filed motions to suppress evidence and for return of property. After a hearing on the motions the complaint for search warrant, the search warrant, and the return and inventory, with police report and property slip incorporated therein, were admitted in evidence.

At this hearing the Assistant Prosecuting Attorney Watson stated that he signed the complaint for search warrant at night before the Magistrate after having been called by Lt. Corum of the Clay County sheriff's office and Detective Adamson. Neither he, Corum or Adamson ever testified before the Magistrate and he further stated that he did not personally know that the items allegedly stolen, hereinafter mentioned, were in appellant's home.

Detective Adamson of the Kansas City, Missouri, police department sought a search warrant on September 9, 1966, about 11:30 P.M., and the warrant was issued about midnight bearing date September 10. Just previously to this time he had talked on the telephone at about 10:00 P.M. with a Lt. Hall of the Kansas City, Kansas, police department after which he called Captain Leptag of the sheriff's office of Johnson County, Kansas. Thereafter he and Detective Trallope went to the sheriff's office of Clay County, Missouri, passing appellant's home on the way so as to verify the location and description of the house thus given

him by Hall and Leptag. At the Clay County sheriff's office Lt. Corum called Watson and relayed certain information to him, which he, Corum, had received from Leptag and Hall, neither of whom were ever present in the Magistrate Court. After all of the above had transpired Adamson, with various officers, executed the issued warrant at about 1:00 A.M., by serving appellant who answered the door in response to their knocks and admitted them. Once inside the house Adamson checked the serial number of a television set located in the room, found that it appeared on the warrant and placed appellant under arrest. The house, garage, outbuildings and entire area were then searched. Adamson related that not all the items listed as stolen were found at the appellant's home, nor were all the items listed on the search warrant found there. In addition, items were seized by the officers which were not listed on the search warrant. Everything that appellant did not claim he purchased was seized by the officers. Articles of personalty were seized from the outbuildings, but the witness could not categorize which articles. The Court, after the hearing, overruled the motions and the case went to trial.

The State's first witness was Kenneth Martin, manager of the company. He testified that on October 10, 1965, he discovered that the building had been broken into and several items were missing. An inventory was made and filed with the highway patrol; however, several items so listed were later found. Several portable television sets, a couple of larger sets, mechanics' tools, a shotgun, a rifle and several small General Electric portable appliances were taken. Sometime later Martin and other employees went to the Kansas City police station to view some property. He identified a television set, tool boxes similar to those owned by the employees, other smaller items identifiable by sight and a rifle by identification number. He had seen appellant in Kahoka, where appellant's brother lived, and where the appellant was employed for awhile quite sometime before the bur-

glary. The items identified were returned to the company. The company had been burglarized three times in a short period of time, the instant burglary being the first such occurrence.

The next witness was James Hauptman, a mechanic with the company. On September 13, 1966, he went to the Kansas City police station with Ken Martin and another employee, George English, where he saw a grinder that had been at the company's premises. He also observed a tool cabinet which belonged to George English and some of his own tools with identifying mark "JH" thereon.

George English had been employed as a mechanic at the company and kept his own tools in a tool cabinet he owned on the premises. A burglary occurred and some of his tools and tool cabinet were taken, which he saw about a year later at the Kansas City police station. He also recognized a grinder there, which had been on the company premises.

Detective Adamson served the search warrant and searched the house, finding a television set with a serial number listed in the warrant. He arrested appellant, advised him of his constitutional rights and allowed him to make a telephone call. He then completed the search of the house and garage, finding two electric coffee makers, one General Electric clock radio, a portable heater, an upright tool cabinet with tools, a floor washer and dryer, an electric impact wrench, and a grinder and buffer. All items were taken to the police property room. During the progress of the search Adamson asked the appellant about each article seized and in response the appellant or his wife either claimed the article was purchased or remained silent. Articles claimed by appellant were not seized. Appellant told him that he had sold a gun when asked about a gun case. None of the articles seized were hidden in the house but were kept in the normal place, except an item found in the attic.

No evidence was offered on behalf of the defendant. With the facts of the case in this posture, the appellant strenuously contends that the only evidence shown by the State on which his guilt rested was the possession of the aforesaid property, and that under the essential requirements of this charge that fact alone is not sufficient, it being vital that the State prove he received the property knowing same to be stolen. The State urges that the "facts and circumstances" in the case demonstrate the appellant's guilty knowledge in these respects: the fact of possession of stolen property by appellant, the quantity of said property, and the incriminating fact that when the defendant was shown a particular article during the search he remained silent as to some and responded as to others.

Concerning the necessity of the vital element of guilty knowledge under this charge, in State v. Taylor, Mo., 422 S.W.2d 633, 636(1, 2), this Court said: "As stated earlier, the issue is whether the evidence shows the required guilty knowledge on the part of the defendant. In deciding this, there are several well established rules to keep in mind as follows: Many cases have held guilty knowledge requires knowledge on the part of the accused of the stolen character of the goods at the time he received them. This means actual knowledge must be proved and found, not mere negligence in failing to know, not what a reasonably prudent man might know or believe, not facts which would put a reasonably prudent man on guard, although of course the knowledge which defendant possessed may be shown by circumstances. And the mere fact of possession of the goods by the defendant raises no presumption defendant knew the property had been stolen by another." The evidence in the instant case shows that some eleven months after the burglary the appellant's house was searched and the aforementioned property found; however, the vital element of guilty knowledge, either actual or constructive, is wholly lacking. See State v. Simone, Mo., 416 S.W.2d 96, 101,

where the Court held that possession of stolen property, supplemented by defendant's statement to police officers touching on his guilty knowledge constituted "facts and circumstances" which warranted submission of the case to the jury. Some factors which are said to have a bearing on guilty knowledge are inadequacy of price, irresponsibility of the vendor or depositor, and secrecy of the transaction. State v. Ham, Mo., 104 S.W.2d 232, 233 (1, 2).

Further, we do not believe that the quantity of the aforesaid property found in appellant's house supplies this prerequisite, or raises a presumption of guilty knowledge needed to the dignity of substantial evidence. We are not aware of any case which would permit us to infer guilty knowledge on the basis alone of the quantity of personal property allegedly stolen. This is not to say that under proper circumstances and with other facts such a factor might not tend to substantiate an inference of guilty knowledge (State v. Ham, Mo., 104 S.W.2d 232, 233(3); however within the framework of the facts involved in the instant case we do not hold this factor to be of probative value. Many items seized from appellant's house such as General Electric appliances, firearms and other items were not directly traceable to the burglary by satisfactory identification. In fact, many items were seized which were not on the search warrant.

Nor do we believe that appellant's silence can augment the proof necessary to be shown of his guilty knowledge. Over objection, the State was allowed to show that as to some pieces of personal property the appellant remained silent, thus inferentially casting suspicion on his state of mind with reference to said article at the time he acquired it. We are confronted with divergent principles regarding an accused's duty or obligation to explain his possession of stolen property and the circumstances under which received (State v. Richmond, 186 Mo. 71, 84 S.W. 880, 882, 883(2)) and his constitutional right to remain silent once

under arrest. In State v. Phelps, Mo., 384 S.W.2d 616, 621, this Court said: "The rule in this state, and the greater weight of authority, is that silence of the accused when not under arrest, and in circumstances such that only a guilty person would remain silent, may be shown. After arrest or while in custody the evidence is inadmissible because he is under no duty to speak. State v. Dowling, 348 Mo. 589, 154 S.W.2d 749, 755 [4, 5] and the many cases there cited from this and other jurisdictions. * * *" Continuing, the Court in Phelps said, 1. c. 621: "The defendant does not refute this conclusion or explain for he did not testify in his own behalf, but he was not required to take the stand and testify even for the limited purpose of refuting the officer's conclusion". In the instant case the appellant was under arrest when questioned by the officer and under no duty to speak. In the case of State v. Dowling, 348 Mo. 589, 154 S.W.2d 749, 755(9, 10), the Court said: "The learned Assistant Attorney General argues the foregoing rules do not apply because the State is entitled to prove the entire conversation where part of it is shown, citing: State v. Murphy, 345 Mo. 358, 361, 362, 133 S.W.2d 398, 400(11) * * *. This is true where part of the same conversation is incriminating and part is not. But here no part of the conversation between appellant and Chief Carroll was incriminating. In his first answer appellant refused to talk until he had consulted an attorney; in the second he refused to say anything; and in the third he denied the accusation." Here the appellant claimed ownership of various articles of personal property and remained silent as to others, except as to a gun when asked about a gun case, which was not shown to be connected with the burglary. There was nothing incriminating about what appellant said other than the exercise of his legal right to remain silent. Articles claimed as being owned by defendant were not seized by the officers.

In State v. Taylor, supra, the Court held that although the jury did not believe

the defendant's explanation of how he happened to come into possession of questioned property, this fact did not permit an inference of guilty knowledge on his part at the required time which will take the place of substantive proof. The Court in Taylor, 422 S.W.2d l. c. 637, said: "The jury evidently disbelieved his explanation. But in a criminal case, where defendant is presumed to be innocent and where the burden of proof on the state is greater than that on the plaintiff in a civil case, is the effect of disbelief of defendant's explanation the equivalent of proof to the contrary? * * * 'Mere disbelief of denials of facts which must be proved is not the equivalent of affirmative evidence in support of those facts'. * * * 'But a belief that testimony is false will not support an affirmative finding that the reverse is true. * * *'" In this context we do not perceive any significant or valid distinction between a disbelieved explanation and no explanation at all. Where the burden of proving every essential element of an offense rests with the State, the defendant is under no obligation to "break the chain" of circumstantial evidence in order to be entitled to an acquittal. State v. Irby, Mo., 423 S.W.2d 800, 802(1). And "mere suspicion, however strong, will not supply the place of evidence where life or liberty is at stake", State v. Jones, 106 Mo. 302, 17 S.W. 366, 369, or "Suspicions or even strong probabilities of guilt do not authorize a conviction", State v. Scott, 177 Mo. 665, 76 S.W. 950, 952. We hold that the State did not sustain the burden of proving appellant's guilt under the law, and therefore a submissible case was not made against the appellant of knowingly receiving stolen property.

What we heretofore have said concerning the first assignment of error is dispositive of the case on this appeal; however, we are constrained to consider the contentions advanced under the second assignment regarding the legality of the search warrant in view of the possibility this case may be retried. In urging the illegality of the search warrant because issued without "probable cause" having been presented to or found by the Magistrate, the appellant cites a number of federal cases dealing with the necessity of such a finding in order to support the legality of the warrant. The arguments urged by appellant and the citation of authorities relied upon here were advanced in the case of State v. Taylor, Mo., 391 S.W.2d 929, which upheld the validity of a search warrant almost identical to the one here under consideration, and were there fully considered, discussed and answered and require no further disposition. In Search Warrant of Property at 5 W. 12th Street, Kansas City, Mo. v. Marcus, Mo., En Banc, 334 S.W.2d 119(9), Supreme Court Rule 33.01, V.A.M.R., which is under attack here, was recognized as valid and constitutional. See also Marcus v. Search Warrants of Property at 104 East Tenth Street, Kansas City, Missouri, et al., 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed. 2d 1127.

The judgment therefore is reversed, however since we cannot conclude on the record before us that it would be impossible in any event for the prosecution to make a submissible case against the defendant, we are reluctant to reverse the cause outright, and therefore remand the cause for a new trial if the prosecution is so advised.

Reversed and remanded.

FINCH, P. J., and DONNELLY, J., concur.

EAGER, J., not sitting.