**Arvin J. GARRETT, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 17107.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 28, 1991.

---

**3.** Dorinda's request for damages for frivolous appeal pursuant to Rule 84.19 is denied.

Judith C. LaRose, Columbia, for appellant.

William L. Webster Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

Arvin J. Garrett ("movant") appeals from a judgment denying relief in a proceeding by him under former Rule 27.26[1] to vacate his conviction, per jury trial, of murder in the first degree. The conviction was affirmed on direct appeal. *State v. Garrett,* 595 S.W.2d 422 (Mo.App.1980).

In the instant proceeding, the circuit court (henceforth referred to as "the motion court") conducted an evidentiary hearing at which movant appeared in person and with counsel. Thereafter, with commendable diligence, the motion court made comprehensive findings of fact and conclusions of law.

In this appeal, movant presents three points relied on. Our opinion in the direct appeal provides a factual preface to our discussion of them.

Movant's first point:

"The motion court clearly erred in denying [movant's] Rule 27.26 motion be-

cause the record clearly shows that [movant] was denied the effective assistance of counsel ... in that [movant's] trial counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under the same or similar circumstances, by failing to request a pretrial mental examination of [movant] when counsel knew that [movant] was taking prescription drugs for psychological problems prior to the trial."

The motion court's findings included this:

"Movant claims that his trial counsel was ineffective for failing to file a pretrial motion for a mental examination. Movant alleges that at the time of his confessions he was under the influence of 'psychological' drugs and was suffering from a mental defect. Movant apparently claims that the drugs and mental defect were such as to make his confessions involuntary. Trial counsel testified at the evidentiary hearing that there was nothing to suggest to him that there was anything wrong with movant's mental condition. The only evidence offered to the contrary was movant's own testimony which this Court finds to be unworthy of belief. In the absence of any suggestion of a mental problem, counsel cannot be held to have been ineffective in failing to request the mental examination. *O'Neal v. State,* 724 S.W.2d 302, 306 (Mo.App., S.D.1987). In addition, movant failed to establish that he was prejudiced by trial counsel's failure to request the mental examination. Movant did not present any evidence at the evidentiary hearing to show that a mental exam would have provided anything helpful to him. *Id.* at 306. This ground is denied."

■ Our review is limited to a determination of whether the findings, conclusions, and judgment of the motion court are clearly erroneous. Rule 27.26(j); *Mallett v. State,* 769 S.W.2d 77, 79[1] (Mo. banc 1989),

---

**1.** Rule 27.26 was repealed effective January 1, 1988. Page 142, Missouri Rules of Court (19th ed. 1988). The instant proceeding continues to be governed by Rule 27.26, as movant's sentence was pronounced prior to January 1, 1988, and his motion under Rule 27.26 was pending prior to said date. Rule 29.15(m), Missouri Rules of Criminal Procedure (1991).

*cert. denied,* 494 U.S. 1009, 110 S.Ct. 1308, 108 L.Ed.2d 484 (1990).

■ To prevail on a claim of ineffective assistance of counsel, a prisoner seeking post-conviction relief must show (1) his lawyer failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under similar circumstances, and (2) the prisoner was thereby prejudiced. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987). The prisoner must satisfy both elements; if he fails to satisfy one, the court need not consider the other. *Id.*

■ In the argument under his first point, movant asserts he was prejudiced because his lawyer failed to move for a pretrial mental examination. However, movant supplies no clue as to what the prejudice was.

At the evidentiary hearing in the motion court, movant testified he was taking Mellaril and Thorazine "at the time that all this was going on."

On October 10, 1978, at a pretrial hearing on a motion to suppress, movant testified he began taking Thorazine in January, 1978, in the penitentiary.[2] Movant avowed he was taking Mellaril at the time he wrote the letter of April 29, 1978, to the prosecutor (described in 595 S.W.2d at 426).

The murder that is the subject of this proceeding occurred late on February 19, 1977, or in the early morning hours of the next day. Movant directs us to no evidence indicating he was taking Mellaril or Thorazine at that time or that he suffered from any mental infirmity at that time.[3] Consequently, there is nothing in the record suggesting a mental examination would have supplied a basis for a defense of not guilty by reason of mental disease or defect excluding responsibility.

The record is likewise bare of any indication that a mental examination would have supplied a basis for suppressing movant's incriminatory statements. In 595 S.W.2d at 426–28, we discussed movant's contention that the medication rendered his incriminatory statements involuntary. Rejecting that argument, we noted movant's own testimony was, "I knew exactly what I was doing" at the time of the April 29, 1978, letter. *Id.* at 428.

Finally, the record amply refutes any contention movant was unable to understand the proceedings against him or assist his lawyer in his defense. At the evidentiary hearing in the motion court, the lawyer who represented movant at trial testified he (the lawyer) had no problems with movant in preparing the case. Counsel explained, "He was competent, he was able to assist me, and ably assisted me in his defense at all times...." Counsel recalled movant was asked in every court hearing whether he was under the influence of drugs. According to counsel, movant always responded, "No." On cross-examination, counsel testified: "He was ably participating in his defense with me. I was having no problem communicating with him or having him help me prepare a defense."

■ The motion court, as we have seen, found movant's testimony about his mental condition and the effect of the medication unworthy of belief. In this 27.26 proceeding, credibility of the witnesses was a matter for the motion court's determination; the motion court was not required to believe movant's testimony, even had there been no evidence to the contrary. *Johnson v. State,* 774 S.W.2d 862, 863[6] (Mo.App. 1989); *Thomas v. State,* 759 S.W.2d 622, 623[2] (Mo.App.1988); *Leigh v. State,* 673 S.W.2d 788, 790[3 and 4] (Mo.App.1984).

**2.** As explained in our earlier opinion, 595 S.W.2d at 425, movant was convicted of another murder prior to being tried for the one that is the subject of the instant proceeding. He was delivered to the penitentiary as a result of the former conviction November 3, 1977.

**3.** In 595 S.W.2d at 426, we noted that in movant's letter of April 29, 1978, he related he

passed out before the murder because of "drugs and dope." Movant makes no contention that this alleged stupor would have supported a defense of not guilty by reason of mental disease or defect excluding responsibility, or that he ingested the "drugs and dope" because of a mental affliction.

*O'Neal v. State,* 724 S.W.2d 302 (Mo. App.1987), cited by the motion court in its findings, *supra,* holds that when, in a Rule 27.26 proceeding, a prisoner challenges his lawyer's failure to move for a mental examination, the prisoner must show the existence of a factual basis indicating his mental condition was questionable, which should have caused the lawyer to initiate an independent investigation of the prisoner's mental state. *Id.* at 305[4]. In the absence of some suggestion of mental abnormality, there is no duty on counsel to initiate an investigation of an accused's mental condition. *Id.* at 305–06[5].

The testimony of movant's lawyer, which the motion court obviously believed, established there was no indication movant had any mental affliction or that the medication impaired his mental acuity. That being so, the failure of movant's lawyer to request a pretrial mental examination of movant did not constitute failure to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under similar circumstances. *Id.* at 306[6]. Furthermore, movant has demonstrated no prejudice from the lack of a pretrial mental examination. His first point is, accordingly, denied.

His second point:

"The motion court clearly erred in denying [movant's] motion ... pursuant to Rule 27.26, because [movant] was charged with capital murder under section 559.005, RSMo [Supp.] 1975 but was convicted of first degree murder and sentenced by the jury to life imprisonment. The trial court sentenced [movant] to life imprisonment with no possibility of parole for fifty years, and thus the court exceeded its jurisdiction in sentencing [movant] to life imprisonment without parole and the sentence imposed was in excess of the maximum authorized by law."

■ On direct appeal, movant pointed out that the trial court sentenced him to life imprisonment and added a proviso that he not be paroled for 50 years. 595 S.W.2d at 434[30, 31]. Movant noted that the verdict-directing instruction did not mention the no-parole proviso, and the life sentence assessed by the jury did not include it. Movant argued he was thereby denied his constitutional right to a jury trial on the issue of punishment. This Court rejected that contention. *Id.*

On cursory examination, movant's second point in this appeal appears to raise the identical issue discussed in the preceding paragraph. However, the argument following movant's second point reveals it is a different contention than the one rejected on direct appeal.

Four statutes are pertinent to movant's second point. All are in RSMo Supp.1975. They are:

**"559.005. Capital murder defined.—** A person is guilty of capital murder if he unlawfully, willfully, knowingly, deliberately, and with premeditation kills or causes the killing of a human being.

**559.007. First degree murder defined.—**The unlawful killing of a human being when committed without a premeditated intent to cause the death of a particular individual but when committed in the perpetration of or in the attempt to perpetrate arson, rape, robbery, burglary, or kidnapping is murder in the first degree.

**559.009. Degree of homicide, jury to determine—punishments for various degrees.**

. . . .

3. Persons convicted of capital murder shall be punished by death. Persons convicted of murder in the first degree shall be punished by imprisonment by the division of corrections during their natural lives. . . .

**559.011. Alternative punishment if death penalty declared unconstitutional.—**If the category of capital murder or the penalty prescribed herein is declared to be unconstitutional by the Missouri supreme court or the United States Supreme Court, all killings which would be capital murder under any of the circumstances specified in section 559.005 shall be deemed to be murder in the first degree and the offender shall be punished accordingly, except that he shall

not be eligible for probation or parole until he has served a minimum of fifty years of his sentence."

These statutes were in effect at the time of the murder in question, but were thereafter repealed. Laws of Missouri 1977, H.B. 90, pp. 718–22.

Movant was charged with capital murder in violation of § 559.005.

In *State v. Duren,* 547 S.W.2d 476 (Mo. banc 1977), the Supreme Court of Missouri related the historical background of the enactment of § 559.005 and the other statutes quoted above. 547 S.W.2d at 477–78. Applying decisions of the Supreme Court of the United States, the Supreme Court of Missouri in *Duren* held §§ 559.005 and 559.009 failed to provide a constitutionally acceptable procedure for imposing the death penalty. 547 S.W.2d at 480[1]. However, the Court went on to hold that the indictment for capital murder was valid, as was the "alternative" punishment provided in § 559.011. 547 S.W.2d at 480–81[2]. That section, as we have seen, provided that if the death penalty be declared unconstitutional, all killings which would be capital murder under any of the circumstances specified in § 559.005 shall be deemed murder in the first degree and the offender shall be punished accordingly, except he shall not be eligible for probation or parole until he has served a minimum of 50 years of his sentence. Under § 559.-009.3, the punishment for murder in the first degree was imprisonment during the offender's natural life.

Movant argues he "should have only received life imprisonment, since [§] 559.-009.3 ... provided that persons convicted of murder in the first degree shall be punished by imprisonment during their natural lives." Movant maintains the provision in the judgment that he is ineligible for parole until he has served 50 years of his sentence exceeds "the maximum authorized by law, which was life imprisonment for first degree murder."

In *State ex rel. Locke v. Burkart,* 548 S.W.2d 550 (Mo. banc 1977), decided simultaneously with *Duren,* the Supreme Court of Missouri squarely held an accused charged with capital murder under § 559.-005, RSMo Supp.1975, could be prosecuted for such offense with punishment as specified in § 559.011, RSMo Supp.1975. The accused in *Locke* was subsequently tried under those statutes, convicted, and sentenced to imprisonment during his natural life, with the proviso that he not be eligible for probation or parole until he had served a minimum of 50 years of his sentence. *State v. Locke,* 587 S.W.2d 346 (Mo.App. 1979). In that trial, as in movant's trial, the verdict-directing instruction referred to the homicide as murder in the first degree, the designation in § 559.011. 587 S.W.2d at 347. Additionally, the verdict-directing instruction in *Locke,* as in movant's case, did not inform the jurors that if they found the accused guilty of murder in the first degree and assessed his punishment at life imprisonment (the only authorized sentence), he could not be paroled for 50 years. *Id.* The accused in *Locke* challenged the verdict-directing instruction and the no-parole proviso in the sentence. This Court rejected those challenges and held the accused was properly sentenced under § 559.-011. 587 S.W.2d at 349[2 through 4].

*Duren, Locke* (Mo. banc 1977), and *Locke* (Mo.App.1979), govern movant's second point. It is, accordingly, denied.

■ Movant's final point avers he received ineffective assistance of counsel at the jury trial, and the motion court erred in ruling otherwise, in that movant's lawyer failed "to contact, interview, investigate and call certain alibi witnesses." [4] Although the witnesses are not identified in the point, the argument that follows it names six individuals.

In the motion court, the lawyer who represented movant at the jury trial testified about his reasons for not calling five of the six to testify at trial. The sixth so-called "alibi witness" testified in the motion court; his testimony demonstrated he could not have given movant an alibi.

---

4. Movant presents this point pro se.

In its carefully detailed findings, the motion court addressed movant's complaints about his lawyer's failure to present the six witnesses referred to above (and numerous others). The motion court found movant's lawyer had strategic reasons for not calling them, and those tactical decisions did not constitute ineffective assistance.

Selection of witnesses is a question of trial strategy, and the mere choice of trial strategy is not a foundation for finding ineffective assistance of counsel. *Sanders,* 738 S.W.2d at 858; *Harry v. State,* 800 S.W.2d 111, 115[7] (Mo.App. 1990). If a lawyer believes the testimony of an alibi witness would not unqualifiedly support his client's position, it is a matter of trial strategy not to call him as a witness. *Eldridge v. State,* 592 S.W.2d 738, 741 (Mo. banc 1979); *Sanders v. State,* 790 S.W.2d 497, 499[3] (Mo.App.1990).

The motion court's findings regarding the failure of movant's lawyer to call the six "alibi witnesses" are supported by substantial evidence and are not clearly erroneous. No error of law appears, and an extended discussion of movant's third point would have no precedential value. We therefore deny the third point in compliance with Rule 84.16(b), Missouri Rules of Court (1991).

The motion court's judgment denying relief is affirmed.

PREWITT, P.J., and PARRISH, J., concur.